# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIRILITY MEDICAL LTD, <br><br> Plaintiff, <br><br> v. <br><br> MORARI, INC., <br><br> Defendant. | C.A. No. 1:25-cv-00338-UNA <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Virility Medical Ltd. ("Virility Medical" or "Plaintiff"), by and through its undersigned counsel, brings this complaint for patent infringement against defendant Morari, Inc. ("Morari" or "Defendant"). Virility Medical alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.

## THE PARTIES

2. Plaintiff Virility Medical is an Israeli corporation with its principal place of business at 24 HaNagar Street, Hod Hasharon 4527713 Israel.

3. Upon information and belief, Morari is a Delaware corporation with its principal place of business at 6501 Zircon Lane North, Maple Grove, Minnesota, 55211.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over Plaintiff's patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the patent claims arise under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

1

5.  This Court has general personal jurisdiction over Morari because it is a Delaware corporation.

6.  Venue is proper in this District pursuant to 28 U.S.C. §1400(b) because Morari is incorporated within this District.

## BACKGROUND

### A. Tal Gollan and His Inventions

7.  Tal Gollan is a medical device entrepreneur with a background in biomedical engineering.

8.  After studying existing treatments for premature ejaculation including selective serotonin reuptake inhibitors, botulinum neurotoxin, and desensitization, Mr. Gollan conceived and invented a medical device utilizing electrical stimulation as a treatment for premature ejaculation.

9.  Mr. Gollan submitted provisional applications to the United States Patent Office describing his inventions and subsequently received patents directed to his inventions.

10. Mr. Gollan's patents include: United States Patent No. 10,773,072 ("the '072 Patent"); United States Patent No. 11,471,666 ("the '666 Patent"); and United States Patent No. 12,194,289 ("the '289 Patent").

11. A true and accurate copy of the '072 Patent is attached hereto as **Exhibit 1**.

12. A true and accurate copy of the '666 Patent is attached hereto as **Exhibit 2**.

13. A true and accurate copy of the '289 Patent is attached hereto as **Exhibit 3**.

### B. Virility Medical

14. Virility Medical was founded in 2016 by Tal Gollan to commercialize his inventions.

15. Virility Medical is a consumer healthcare company specializing in sexual health.

16. The mission of Virility Medical is to design and engineer consumer products to enhance sexual wellbeing.

17. Virility Medical's patented product line, which originally utilized the name vPatch, addresses the medical condition known as premature ejaculation.

18. vPatch is currently marketed using the product name *in2*.

19. An application to market the vPatch product was submitted to the United States Food and Drug Administration for review under Section 513(f)(2) of the Federal Food, Drug, and Cosmetic Act.

20. A submission under Section 513(f)(2) seeks permission to market a device that lacks a legally marketed predicate device.

21. Virility Medical's submission to the Food and Drug Administration included a clinical study comprising a multi-center, international, prospective, 2:1 randomized, double-blind, two-arm, sham-controlled, clinical investigation to evaluate the safety and effectiveness of vPatch.

22. On November 23, 2021, the Food and Drug Administration granted Virility Medical's application for the vPatch under De Novo number DEN210012.

23. On April 3, 2023, Virility Medical submitted an application to the Food and Drug Administration under Section 510(k).

24. A submission under Section 510(k) provides premarket notification to the Food and Drug Administration that a device to be marketed is substantially equivalent to an existing approved device.

25. Virility Medical's 510(k) application was based on substantial equivalence to the predicate device approved for marketing under DEN210012, *i.e.*, the vPatch.

26. On May 1, 2023, the Food and Drug Administration granted Virility Medical's application under 510(k) number K223595.

27. Virility Medical's current product is called the *in2* and is available over the counter in the United States.

28. Virility Medical's permission to market the *in2* in the United States is based on 510(k) number K223595.

29. The *in2* device utilizes electrical impulses delivered via a patient's perineum to delay ejaculation.

30. An image of the *in2* device is provided below.



C.   **Morari**

31. Morari produces a product called MOR that it claims is "the world's first wearable technology that is intended to help men last longer." **Exhibit 4** (https://www.morarimedical.com/).

32. Morari claims that the MOR product uses "Neurostimulation technology." **Exhibit 4**.

33. An image of the MOR product as captured from approximately 0:56 of the video entitled "MOR Instructional Video" provided at https://www.youtube.com/watch?v=-

4

bwn09h0Ob1w, is provided below.



34. On February 13, 2025, Morari issued a press release stating that it "has received clearance from the U.S. Food and Drug Administration" to market MOR. **Exhibit 5** (https://www.morarimedical.com/press-releases/fda-approval).

35. Upon information and belief, Morari began offering the MOR product for sale on or about February 17, 2025.

36. The Food and Drug Administration's 510(k) database includes 510(k) number K241897 for Morari's MOR product. **Exhibit 6** (https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K241897).

37. Morari's application to the Food and Drug Administration for the MOR product asserted substantial equivalence to Virility Medical's approved vPatch product. **Exhibit 6.**

38. As explained by Jeff Bennett (the CEO of Morari) in an article discussing the regulatory process, Morari used Virility Medical's approved "product as a predicate device for [its] FDA submission." **Exhibit 7** (https://www.clinicaltrialvanguard.com/executiveinterviews-/navigating-challenges-in-sexual-health-innovation-with-morari-medical/).

39. Mr. Bennett further explained that Morari "leverage[ed]" Virility Medical's "existing research and technology" in order to "expedite [its] product's development and market entry." **Exhibit 7**.

40. Based on Morari's submission, the Food and Drug Administration concluded that the MOR product is substantially equivalent to Virility Medical's vPatch. **Exhibit 6**.

41. Mr. Bennett has stated that Morari relied upon Virility Medical's "published data showing the effectiveness of neurostimulation" to support its MOR product. **Exhibit 7**.

42. Mr. Bennett also stated that Morari would "continue to follow Virility Medical closely as it represents the most similar competitive product threat." **Exhibit 8** (https://sparkxyz.io/projects/8996/Morari-Medical/).

## THE PATENTS-IN-SUIT

### A.     U.S. Patent No. 10,773,072

43. On September 15, 2020, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '072 Patent, which is entitled "Transcutaneous Electrical Muscle Stimulation Device For The Treatment Of Premature Ejaculation Or Erectile Dysfunction, And Methods Of Use Thereof."

44. The '072 Patent is valid and enforceable.

45. Virility Medical owns the '072 Patent by assignment and possesses all rights to recover for infringement.

46. Morari became aware of the '072 Patent no later than reception of the international search report issued by the United States Patent and Trademark Office ("USPTO") during the prosecution of Morari's Patent Cooperation Treaty ("PCT") application PCT/US2020/067234.

47. The international search report in PCT/US2020/067234 was dated March 10, 2021.

48. The international search report in PCT/US2020/067234 identified the '072 Patent as relevant to the claims in Morari's PCT application.

49. Evidence that Morari had knowledge of the '072 Patent is also provided in the file

history of Morari's United States patent application number 17/789,480, based on the fact that Morari submitted the '072 Patent to the USPTO as prior art via an Information Disclosure Statement dated June 27, 2022.

50. On March 6, 2024, Sharon Ravid, the CEO of Virility Medical, sent an email to Mr. Bennett stating:

> We note that your company is also developing premature ejaculation devices. I wanted to draw your attention to the fact that our premature ejaculation devices are covered by a number of US patents (e.g. US10773072, US11471666) and other pending applications, and we naturally expect your company to respect our patents. Should you fail to do so, our company will not hesitate to take the necessary measures at its disposal to protect its technology from being misappropriated.

**Exhibit 9**.

51. No later than March 6, 2024, Mr. Bennett was aware of the '072 Patent and its relevance to the MOR product under development by Morari.

### B. U.S. Patent No. 11,471,666

52. On October 18, 2022, the United States Patent and Trademark Office duly and legally issued the '666 Patent, which is entitled "Transcutaneous Electrical Muscle Stimulation Device For The Treatment Of Premature Ejaculation Or Erectile Dysfunction, And Methods Of Use Thereof."

53. The '666 Patent is valid and enforceable.

54. Virility Medical owns the '666 Patent by assignment and possesses all rights to recover for infringement.

55. On March 6, 2024, Ms. Ravid sent an email to Mr. Bennett stating:

> We note that your company is also developing premature ejaculation devices. I wanted to draw your attention to the fact that our premature ejaculation devices are covered by a number of US patents (e.g. US10773072, US11471666) and other pending applications, and we naturally expect your company to respect our patents. Should you fail to do so, our company will not hesitate to take the necessary measures at its disposal to protect its technology from being misappropriated.

**Exhibit 9**.

56. No later than March 6, 2024, Mr. Bennett was aware of the '666 Patent and its relevance to the MOR product under development by Morari.

### C. U.S. Patent No. 12,194,289

57. On January 14, 2025, the United States Patent and Trademark Office duly and legally issued the '289 Patent, which is entitled "Transcutaneous Electrical Muscle Stimulation Device For The Treatment Of Premature Ejaculation Or Erectile Dysfunction, And Methods Of Use Thereof."

58. The '289 Patent claims priority to the '072 Patent and has a substantially identical specification.

59. The '289 Patent is valid and enforceable.

60. Virility Medical owns the '289 Patent by assignment and possesses all rights to recover for infringement.

61. On March 6, 2024, Ms. Ravid sent an email to Mr. Bennett stating:

> We note that your company is also developing premature ejaculation devices. I wanted to draw your attention to the fact that our premature ejaculation devices are covered by a number of US patents (e.g. US10773072, US11471666) and other pending applications, and we naturally expect your company to respect our patents. Should you fail to do so, our company will not hesitate to take the necessary measures at its disposal to protect its technology from being misappropriated.

**Exhibit 9**.

62. No later than March 6, 2024, Mr. Bennett was aware that Virility Medical was the owner of additional pending patent applications directed to premature ejaculation devices.

63. The patent application that issued as the '289 Patent was published by the United States Patent and Trademark Office on January 21, 2021.

64. Upon information and belief, Morari was aware of the published patent application

8

that issued as the '289 Patent.

## COUNT I
### (Infringement of the '072 Patent)

65. Virility Medical realleges and incorporates by reference the allegations of all preceding paragraphs of this Complaint as though set forth fully herein.

66. Morari directly infringes, literally and/or under the doctrine of equivalents, at least claim 1 of the '072 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States the MOR product.

67. Morari's direct infringement of the '072 Patent began at least as early as February 17, 2025, when it began offering the MOR product for sale.

68. Morari indirectly infringes at least claim 9 of the '072 Patent in violation of 35 U.S.C. § 271(b) by actively inducing direct infringement by others.

69. Upon information and belief, the instructions provided with the MOR product as sold actively induce infringement of at least claim 9 of the '072 Patent.

70. Morari indirectly infringes at least claim 9 of the '072 Patent in violation of 35 U.S.C. § 271(c) by contributing to the infringement of others.

71. Upon information and belief, Morari offers to sell or sells within the United States or imports into the United States the MOR product knowing the same to be especially made or especially adapted for use in an infringement of at least claim 9 of the '072 Patent.

72. Upon information and belief, the MOR product is not a staple article or commodity of commerce suitable for substantial noninfringing uses.

73. A claim chart describing Morari's infringement of claims 1 and 9 of the '072 Patent is attached to this Complaint as **Exhibit 10**.

74. Because of Morari's infringing activities with respect to the '072 Patent, Virility

Medical has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.

75. Virility Medical has been damaged by Morari's conduct, including economic and non-economic losses.

76. Virility Medical continues to be damaged by that conduct and has no adequate remedy at law to compensate for all the injury stemming from Morari's conduct.

77. Morari's acts of infringement with respect to the '072 Patent are willful warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

78. Morari's infringement of the '072 Patent was and remains deliberate and intentional.

79. Morari became aware of the '072 Patent no later than March 10, 2021. As of that date, Morari was aware of the claims of the '072 Patent and their relevance to the MOR product under development by Morari.

80. Morari's continued development of the MOR product after becoming aware of the '072 patent shows deliberate and intentional infringement.

81. Morari was on notice of the potential relevance of the '072 Patent to its MOR product, including the potential infringement of the '072 Patent, no later than March 6, 2024.

82. Beyond developing its product with knowledge of the '072 Patent, Morari submitted and relied upon Virility Medical's documentation describing its vPatch as part of its own application to the Food and Drug Administration.

83. Morari's application to the Food and Drug Administration for the MOR product alleged substantial equivalence to Virility Medical's patented vPatch product.

84. Morari's allegation of substantial equivalence to the patented vPatch product shows

that Morari's infringement of the '072 Patent was and remains deliberate and intentional.

85. Morari's conduct with respect to the '072 Patent is exceptional and warrants an award of reasonable attorney fees pursuant to 35 U.S.C. § 285.

## COUNT II
### (Infringement of the '666 Patent)

86. Virility Medical realleges and incorporates by reference the allegations of all preceding paragraphs of this Complaint as though set forth fully herein.

87. Morari directly infringes, literally and/or under the doctrine of equivalents, at least claim 1 of the '666 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States the MOR product.

88. Morari's direct infringement of the '666 Patent began at least as early as February 17, 2025, when it began offering the MOR product for sale.

89. A claim chart describing Morari's infringement of claim 1 of the '666 Patent is attached to this Complaint as **Exhibit 11**.

90. Because of Morari's infringing activities with respect to the '666 Patent, Virility Medical has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.

91. Virility Medical has been damaged by Morari's conduct, including economic and non-economic losses.

92. Virility Medical continues to be damaged by such conduct and has no adequate remedy at law to compensate for all the injury stemming from Morari's conduct.

93. Morari's acts of infringement with respect to the '666 Patent are willful warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

94. Morari's infringement of the '666 Patent was and remains deliberate and

intentional.

95. Morari became aware of the '666 Patent no later than March 6, 2024. As of that date, Morari was aware of the claims of the '666 Patent and their relevance to the MOR product under development by Morari.

96. Morari's continued development of the MOR product after becoming aware of the '666 patent shows deliberate and intentional infringement.

97. Morari was on notice of the potential relevance of the '666 Patent to its MOR product, including the potential infringement of the '666 Patent, no later than March 6, 2024.

98. Beyond developing its product with knowledge of the '666 Patent, Morari submitted and relied upon Virility Medical's documentation describing its vPatch as part of its own application to the Food and Drug Administration.

99. Morari's application to the Food and Drug Administration for the MOR product alleged substantial equivalence to Virility Medical's patented vPatch product.

100. Morari's allegation of substantial equivalence to the patented vPatch product shows that Morari's infringement of the '666 Patent was and remains deliberate and intentional.

101. Morari's conduct with respect to the '666 Patent is exceptional and warrants an award of reasonable attorney fees pursuant to 35 U.S.C. § 285.

## COUNT III
**(Infringement of the '289 Patent)**

102. Virility Medical realleges and incorporates by reference the allegations of all preceding paragraphs of this Complaint as though set forth fully herein.

103. Morari directly infringes, literally and/or under the doctrine of equivalents, at least claim 1 of the '289 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States the MOR product.

104. Morari's direct infringement of the '289 Patent began at least as early as February 17, 2025, when it began offering the MOR product for sale.

105. A claim chart describing Morari's infringement of claim 1 of the '289 Patent is attached to this Complaint as **Exhibit 12**.

106. Because of Morari's infringing activities with respect to the '289 Patent, Virility Medical has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.

107. Virility Medical has been damaged by Morari's conduct, including economic and non-economic losses.

108. Virility Medical continues to be damaged by that conduct and has no adequate remedy at law to compensate for all the injury stemming from Morari's conduct.

109. Morari's acts of infringement with respect to the '289 Patent are willful warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

110. Upon information and belief, Morari's became aware of the '289 Patent on or soon after the issue date of January 14, 2025.

111. Upon information and belief, Morari was aware of the application that issued as the '289 Patent.

112. Morari submitted and relied upon Virility Medical's documentation describing its vPatch as part of its own application to the Food and Drug Administration. Morari's application further asserted that its MOR product is substantially equivalent to Virility Medical's vPatch.

113. Alternatively, on information and belief, Morari has been willfully blind to the existence of the '289 Patent and its own infringement.

114. Morari's conduct with respect to the '289 Patent is exceptional and further warrants

an award of reasonable attorney fees pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Virility Medical respectfully requests that this Court grant the following relief:

A. Judgment that the Morari has infringed and continues to infringe one or more claims of '072, '666, and '289 Patents;

B. Judgment that Morari's infringement has been and continues to be willful.

C. An order enjoining Morari, its officers, agents, servants, representatives, and employees, and all persons acting in concert with them, and each of them, from infringing the '072, '666, and '289 Patents;

D. Compensatory damages for the Morari's infringement of the '072, '666, and '289 Patents pursuant to 35 U.S.C. § 284 and a trebling of those damages based on Morari's willful infringement;

E. Prejudgment interest pursuant to 35 U.S.C. § 284;

F. An order requiring Morari to pay all costs associated with this action pursuant to Fed. R. Civ. P. 54(d)(1) and/or 28 U.S.C. § 1920;

G. An order finding this case exceptional and requiring Morari to pay Virility Medical's attorney fees pursuant to 35 U.S.C. § 285; and

H. Such other and additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Virility Medical respectfully requests a trial by jury on all claims and issues so triable.

|  | **STEVENS & LEE** |
|---|---|
| OF COUNSEL: | */s/ Melissa Donimirski* |
|  | Melissa N. Donimirski (No. 4701) |
| STEVENS & LEE, P.C. | Stacey A. Scrivani (No. 6129) |
| Joseph E. Wolfson | 919 N. Market Street, Suite 1300 |
| 510 Carnegie Center, Suite 400 | Wilmington, DE 19801 |
| Princeton, NJ 08540 | (302) 654-5180 |
| (609) 243-9111 | melissa.donimirski@stevenslee.com |
| joseph.wolfson@stevenslee.com | stacey.scrivani@stevenslee.com |
|  |  |
| Michael Eisenberg | *Counsel for the Plaintiff* |
| 485 Madison Avenue, 20th Floor |  |
| New York, NY  10022 |  |
| (212) 319-8500 |  |
| michael.eisenberg@stevenslee.com |  |

Dated: March 18, 2025

15